# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| **JEFFREY SCOTT KAILING,** ] | |
| ] | |
| **Movant,** ] | |
| ] | |
| **v.** ] | **Case No.: 7:22-cv-8037-ACA** |
| ] | |
| **UNITED STATES OF AMERICA,** ] | |
| ] | |
| **Respondent.** ] | |

## <u>MEMORANDUM OPINION</u>

Movant Jeffrey Scott Kailing was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 204 months' imprisonment based on the application of a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *United States v. Kailing*, No. 20-cr-223, doc. 28 at 1–2 (N.D. Ala. Sept. 30, 2021).[1] Mr. Kailing's operative 28 U.S.C. § 2255 motion to vacate sentence asserts the following claims: (1) his sentence exceeds the statutory maximum because he was not eligible for the ACCA enhancement ("Claim One"); and (2) trial counsel provided ineffective assistance by inadequately researching and advising Mr. Kailing about, and not objecting to, the ACCA enhancement ("Claim Two"). (Doc. 11 at 4; doc. 15 at 4, 7; *see* doc. 18).

---

[1] The court refers to Mr. Kailing's criminal proceeding as "*Kailing*" and cites documents from that proceeding as "*Kailing* doc. ___."

Because Mr. Kailing was sentenced above the statutory maximum, the court **WILL GRANT** the § 2255 motion as to Claim One. But because Mr. Kailing has not established that counsel provided ineffective assistance, the court **WILL DENY** the motion as to Claim Two.

## I.    BACKGROUND

In *Kailing*, Mr. Kailing pleaded guilty to being a felon in possession, in violation of 18 U.S.C. § 922(g)(1). (*Kailing* doc. 28 at 1). As part of his plea, Mr. Kailing agreed that he had three qualifying felony convictions for the ACCA enhancement: (1) a Michigan conviction for assault with intent to rob while armed; (2) an Alabama conviction for first-degree manufacture of a controlled substance; and (3) an Alabama conviction for second-degree manufacture of a controlled substance. (*Id.* at 4). The presentence investigation report relied upon those same three convictions to support the ACCA enhancement. (*Kailing* doc. 27 ¶¶ 32, 36–37).

In 1998, an information charged Mr. Kailing with armed robbery, in violation of Michigan Compiled Laws § 750.529.[2] *Michigan v. Kailing*, No. 98-7708-FC (Mich. 13th Judicial Cir.). Mr. Kailing pleaded guilty to assault with intent to rob

---

[2] The court takes judicial notice of the indictment and judgment. *See* Fed. R. Evid. 201(b) (providing that the court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

while armed, in violation of Michigan Compiled Laws § 750.89. *Id.* (Mich. 13th Judicial Cir. Nov. 20, 1998).

In 2012, an Alabama grand jury indicted Mr. Kailing for, among other things, first degree manufacturing of a controlled substance:

> unlawfully manufactur[ing] a controlled substance . . . to-wit: METHAMPHETAMINE, or unlawfully possess[ing] precursor substances . . . to-wit: EPHEDRINE OR PSEUDOEPHEDRINE, in any amount, with the intent to unlawfully manufacture a controlled substance, to-wit: METHAMPHETAMINE, in violation of [Alabama Code] Section 13A-12-217 . . . and, two or more . . . conditions occurred in conjunction with that violation . . . in violation of [Alabama Code] section 13A-12-218.

(Doc. 36-2 at 2). In 2013, an Alabama grand jury indicted Mr. Kailing for, among other things, second degree manufacturing of a controlled substance:

> knowingly and unlawfully manufactur[ing] a controlled substance . . . to-wit: METHAMPHETAMINE, or possess[ing] precursor substances to-wit: EPHEDRINE OR PSUEDOEPHEDRINE, OR A SALT OF AN OPTICAL ISOMER, OR SALT OF AN OPTICAL ISOMER THEREOF, in any amount with the intent to unlawfully manufacture a controlled substance, in violation of section 13A-12-217.

(Doc. 36-4 at 2).

Mr. Kailing pleaded guilty to both charges on the same day. (Doc. 36-1 at 4); *State v. Kailing*, No. CC2012-1334, doc. 8 (Tuscaloosa Cnty. Cir. Ct. Apr. 1, 2014); *State v. Kailing*, No. CC2013-2942, doc. 16 (Tuscaloosa Cnty. Cir. Ct. Apr. 1, 2014).[3]

---

[3] The court takes judicial notice of the judgments in these cases. *See* Fed. R. Evid. 201(b).

The presentence report in *Kailing* recommended finding that Mr. Kailing was an armed career criminal based on the Michigan conviction and the two Alabama convictions. (*Kailing* doc. 27 ¶¶ 23, 32, 36–37, 77). The court's acceptance of that finding enhanced the mandatory minimum sentence to fifteen years and his advisory guidelines range to 188 to 235 months' imprisonment. (*Id.* ¶ 78).

Mr. Kailing did not object to the recommendation to find him an armed career criminal. (Doc. 22). The court sentenced him to 204 months' imprisonment. (*Kailing* doc. 28 at 2). Mr. Kailing did not appeal.

## II.    DISCUSSION

Mr. Kailing makes two intertwined claims: (1) his attorney was ineffective for failing to adequately research and advise him about, and not objecting to, the ACCA enhancement; and (2) he received a sentence above the statutory maximum because he was not eligible for the ACCA enhancement. (Doc. 11 at 4; doc. 15 at 4, 7; *see* doc. 18). Because Mr. Kailing's ineffective assistance claim depends on whether he properly received the ACCA enhancement, the court begins with that claim and Mr. Kailing's arguments about the inapplicability of the enhancement.

### 1.  ACCA Enhancement

At the time of Mr. Kailing's sentencing, a conviction for being a felon in possession of a firearm carried a maximum sentence of ten years' imprisonment, 18 U.S.C. § 924(a)(2) (2018), but if the defendant qualified as an armed career criminal,

4

the statutory minimum increased to fifteen years' imprisonment, *id.* § 924(e)(1) (2018).[4] A defendant qualified as an armed career criminal if he had three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *Id.* The court found that Mr. Kailing was an armed career criminal and enhanced his sentence based on exactly three convictions: the Michigan conviction for assault with intent to rob while armed and the Alabama convictions for first and second degree manufacture of a controlled substance. (*Kailing* doc. 20 at 4; *Kailing* doc. 27 ¶¶ 32, 36–37; *Kailing* doc. 29 at 1–2).

Mr. Kailing contends that: (1) his Michigan conviction for assault with intent to rob while armed does not qualify as a violent felony because it does not involve the use, attempted use, or threatened use of physical force; and (2) his Alabama convictions for first and second degree manufacture of a controlled substance do not qualify as serious drug offenses because (a) he was sentenced for them on the same day; (b) Alabama's definition of methamphetamine is broader than the federal definition of methamphetamine; and (c) the least of the acts criminalized by Alabama Code § 13A-12-217 is mere possession of precursor substances. (Doc. 15 at 7; doc. 11 at 14–16; doc. 15 at 4; doc. 38 at 2–7). The government responds that: (1) the Michigan conviction is categorically a violent felony; and (2) the Alabama

---

[4] Section 924 was amended in 2022 to provide that the unenhanced maximum sentence for being a felon in possession of a firearm is fifteen years' imprisonment. 18 U.S.C. § 924(a)(8) (2022).

convictions qualify as serious drug offenses because (a) Mr. Kailing committed the underlying conduct on different occasions; (b) Mr. Kailing procedurally defaulted any argument about the Alabama and federal definitions of methamphetamine, but in any event, they are identical; and (c) Mr. Kailing's plea colloquy establishes that he was convicted of offenses that fall within the federal definition of serious drug offenses. (Doc. 3 at 8–12; doc. 24 at 3, 7–8; doc. 36 at 4–12).

### a. Michigan Conviction

A "violent felony" is, in relevant part, "any crime punishable by imprisonment for a term exceeding one year, . . . , that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i) (2018). Mr. Kailing was convicted in Michigan court of assault with intent to rob while armed, in violation of Michigan Compiled Laws § 750.89. (*Kailing* doc. 27 ¶ 32); *Kailing*, No. 98-7708-FC (Mich. 13th Judicial Cir. Nov. 29, 1998). The court must therefore evaluate whether a conviction under that statute qualifies as a violent felony for ACCA purposes.

To determine whether a conviction under a state statute qualifies as a violent felony, the court must evaluate whether the elements of the state offense require that the defendant used, attempted, or threatened to use physical force against the person of another using what is called the "categorical approach." *Taylor v. United States*, 495 U.S. 575, 602 (1990); *United States v. Davis*, 875 F.3d 592, 597 (11th Cir.

2017). "Physical force" is "(1) an act that is physical, meaning that it must be exerted by and through concrete bodies, not intellectual or emotional force and (2) a physical act that is directly or indirectly capable of causing physical pain and injury." *United States v. Sanchez*, 940 F.3d 526, 530 (11th Cir. 2019) (quotation marks omitted). If "the least of the acts criminalized includes" as an element "the use, attempted use, or threatened use of physical force against another person," the offense is categorically a violent felony. *Davis*, 875 F.3d at 597; *see* 18 U.S.C. § 924(e)(2)(B)(i) (2018). "The key . . . is elements, not facts." *Descamps v. United States*, 570 U.S. 254, 261 (2013).

Federal courts "analyzing a state law offense . . . are bound by the state supreme court's interpretation of state law, including its determination of the elements of a crime." *Cole v. U.S. Atty. Gen.*, 712 F.3d 517, 527 (11th Cir. 2013), *abrogated in other part by Nasrallah v. Barr*, 590 U.S. 573, 578, 581 (2020). Where "the state supreme court has not definitively ruled, [the court is] bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." *Id.*

Michigan's offense of assault with intent to rob while armed provides that "[a]ny person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be

guilty of a felony." M.C.L. § 750.89. The "article used or fashioned" part of the definition includes "feigned weapon[s]" such as "a toy gun or a finger or other object hidden in a bag or under a coat to simulate the appearance of a weapon." *People v. Jolly*, 502 N.W.2d 177, 181–82 (Mich. 1993) (footnote omitted). By its plain terms, the "least of the acts criminalized" under this statute is (1) any assault of a person (2) with intent to rob and steal (3) while armed with a feigned weapon. *See id*.

Whether the first element—a simple assault—categorically involves the use, attempted use, or threatened use of physical force against the person of another is unclear.[5] Under Michigan's common law, "a simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v. Reeves*, 580 N.W.2d 433, 435 (Mich. 1998) (quotation marks omitted). And "a battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004) (quotation marks omitted). "An object is 'closely connected' to one's person only if interference with the object would engender similar offense as touching their person directly." *Janetsky v. Cnty. of Saginaw*, __ N.W.3d __, No. 166477, 2025 WL 2095369, at *14 (Mich. July 25, 2025). For example, the

---

[5] In the interest of brevity, the court will not address the Sixth Circuit cases cited by the government except to note that they are either unpublished, involve the now-defunct residual clause, or address different Michigan assault statutes with different statutory elements, and they are therefore not persuasive in this context. (*See* doc. 4 at 6–12).

Michigan Supreme Court held in a tort case that a jury could find a defendant committed battery when he slammed a door while the plaintiff was opening it. *Id.*; *cf. Reeves*, 580 N.W.2d at 435 (noting that Michigan "explicitly incorporat[es] aspects of the tort concept into the definition of criminal assault").

However, the United States Supreme Court has cautioned courts against using "legal imagination" to find that a state's statute is too broad to qualify as a predicate offense. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."); *see also Said v. U.S. Att'y Gen.*, 28 F.4th 1328, 1332 (11th Cir. 2022) ("[F]arfetched hypothetical examples of overbreadth" will not suffice) (footnote omitted). And although a party is not required to point to "exemplar prosecutions" if the statutory language "creates a realistic probability that a state would apply the statute to conduct beyond the generic definition," such exemplar prosecutions are helpful if the statutory text fails to create that realistic probability. *See Said*, 28 F.4th at 1331–32.

Neither party cites, and this court's independent research has not revealed, any Michigan Supreme Court cases addressing whether a defendant can be convicted

9

of assault with intent to rob while armed for putting a victim in reasonable apprehension of having something closely connected with the person touched in an offensive way. And the court concludes that, because the statute requires a defendant to have been carrying either a dangerous weapon or a feigned weapon that the victim "reasonably . . . believe[d]" was a dangerous weapon, the least of the acts criminalized by § 750.89 necessarily has as an element the threatened use of physical force against the person of another. *See* 18 U.S.C. § 924(e)(2)(B)(i) (2018); *Descamps*, 570 U.S. at 261; M.C.L. § 750.89; *Jolly*, 502 N.W.2d at 181–82. As a result, the sentencing court properly considered Mr. Kailing's Michigan conviction for assault with intent to rob while armed to be a violent felony for purposes of the ACCA enhancement.

### b. *Alabama Convictions*

Mr. Kailing makes three arguments about why his Alabama convictions do not qualify as predicate offenses for the ACCA. First, he contends that the two convictions should have counted as a single conviction because he was sentenced for them on the same day. (Doc. 11 at 4, 16; doc. 15 at 4). Second, he contends that the Alabama offenses do not categorically qualify as serious drug offenses because Alabama's definition of methamphetamine is broader than the federal definition. (Doc. 15 at 4). Third, he contends that the Alabama offenses do not categorically

10

qualify as serious drug offenses because they can involve possession of precursors before any manufacturing occurred. (Doc. 11 at 4; doc. 15 at 4; doc. 38 at 2–9).

### i.    Counting of Offenses

Two offenses count separately for purposes of the ACCA only if they were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The Supreme Court has held that the different-occasions finding must be made by a jury or admitted by the defendant in a guilty plea. *Erlinger v. United States*, 602 U.S. 821, 834–35 (2024). Mr. Kailing's plea agreement expressly acknowledged that the predicate offenses "were committed on occasions different from one another." (*Kailing* doc. 20 at 4). In his plea agreement, Mr. Kailing agreed that each of the three predicate offenses was "committed on occasions different from one another." (*Kailing* doc. 20 at 4). At his plea hearing, Mr. Kailing stated that he had read the plea agreement and that the section describing the applicability of the ACCA enhancement was accurate. Accordingly, he admitted the fact that the two Alabama drug offenses were committed on different occasions, and a jury finding was not necessary. *See Erlinger*, 602 U.S. at 834–35. The sentencing court correctly concluded that the two offenses counted separately.

### ii.    Definition of Methamphetamine

Mr. Kailing contends that his Alabama convictions do not count as predicate convictions because Alabama's definition of methamphetamine is broader than the

federal definition. (Doc. 15 at 4). The government contends that he procedurally defaulted this argument and even if he did not, the claim fails on the merits. (Doc. 24 at 6).

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). Mr. Kailing did not file a direct appeal of his conviction and sentence. And Mr. Kailing has not responded to the government's assertion of procedural default. (*See* doc. 28 at 8–10). Accordingly, this argument is procedurally defaulted and the court will not address its merits.

### iii.    Possession of Precursors

Mr. Kailing contends that his convictions for first and second degree manufacture of a controlled substance do not count as "serious drug offenses" because the state statutes encompass possessing precursor substances and therefore do not "necessarily entail" manufacturing. (Doc. 11 at 4; doc. 15 at 4; doc. 28 at 8–9; doc. 38 at 2–9).

To determine whether a state offense counts as a predicate for purposes of the ACCA enhancement, the court must compare the elements of the state offense to the ACCA's definition of a "serious drug offense," using the so-called "categorical approach." *United States v. Miles*, 75 F.4th 1213, 1220 (11th Cir. 2023). The first

step is identifying the "least of the acts criminalized by the state statute." *United States v. Penn*, 63 F.4th 1305, 1311 (11th Cir. 2023) (alteration accepted; quotation marks omitted).

Alabama Code § 13A-12-217 criminalizes manufacturing a controlled substance or possessing a precursor substance with the intent to unlawfully manufacture a controlled substance. Ala. Code § 13A-12-217(a); *see Brand v. State,* 941 So. 2d 318, 322 (Ala. Crim. App. 2006) (holding that despite the statute's use of the plural "precursor substances," possession of a single precursor substance can support a conviction). Alabama's first degree offense of unlawful manufacture of a controlled substance is the second degree offense plus two aggravators. Ala. Code § 13A-12-218(a)(1)–(7). So the least of the acts criminalized by § 13A-12-217 is possessing a precursor substance with the intent to unlawfully manufacture a controlled substance. That leads to the question: what is a precursor substance as that phrase is used in the statute?

The Alabama Code does not define "precursor substances." *See id.* §§ 13A-12–217, 20-2-2, 20-2-180, 20-2-181. But § 13A-12-217(a)(2) incorporates by reference § 20-2-181. *Id.* § 13A-12-217(a)(2). And section 20-2-181 relates solely to "listed precursor chemicals." *Id.* § 20-2-181. "Listed precursor chemicals" exclude any chemical that "has been determined to be a controlled substance or an immediate precursor chemical." *Id.* § 20-2-181(b). "Controlled substances" include

13

"immediate precursor[s]." *Id.* § 20-2-2(4). And "immediate precursor" carries a different meaning than "listed precursor chemical." *Compare* Ala. Code § 20-2-2(12), *with id.* § 20-2-180(2). Thus, "precursor substances" in § 13A-12-217 must mean only "listed precursor chemicals" and not "controlled substances" or "immediate precursors" (because "immediate precursors" *are* "controlled substances"). So the least of the acts criminalized by § 13A-12-217 is possessing a "listed precursor chemical" with the intent to manufacture a controlled substance. *See id.* § 13A-12-217(a)(2); *Penn*, 63 F.4th at 1311. The court now turns to whether that act qualifies as a "serious drug offense" under the ACCA.

As relevant here, the ACCA defines a "serious drug offense" to include offenses "involving . . . possessing with intent to manufacture . . . , a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." 18 U.S.C. § 924(e)(2)(A)(ii). The Eleventh Circuit has explained that "possessing with intent to manufacture" means "possessing a *controlled substance* with intent to manufacture" a controlled substance. *Miles*, 75 F.4th at 1221. And the Controlled Substances Act defines a "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6); *see also id.* § 802(23) (defining "immediate precursor"). Like Alabama law, federal law differentiates between controlled substances (which include immediate precursors) and "listed chemicals." *See* 21

14

U.S.C. § 802(6), (23), (33). Accordingly, the definition of "serious drug offense" includes possessing a controlled substances (including an immediate precursor) with the intent to manufacture a controlled substance, but it does not include possessing a "listed chemical" with the intent to manufacture a controlled substance. *See* 18 U.S.C. § 924(e)(2)(A)(ii); 21 U.S.C. 802(6); *Miles*, 75 F.4th at 1221.

Alabama mandates that "[i]f any chemical is designated or deleted as a listed precursor chemical under federal law and notice thereof is given to the Board of Pharmacy, the board shall similarly list or delete the substance" unless the Board specifically objects to the designation or deletion. Ala. Code § 20-2-181(c). It is therefore apparent from the face of the statute that Alabama's offense of possessing "precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance" can include substances that are federally listed chemicals instead of controlled substances. Mr. Kailing's offenses are therefore too broad to categorically be serious drug offenses for ACCA purposes.

Because the offenses are not categorically serious drug offenses, the court must evaluate whether § 13A-12-217, and by extension § 13A-12-218, is divisible, meaning whether it "lists multiple, alternative elements, which effectively creates several different crimes," *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir.

15

2020) (quotation marks omitted; alteration accepted), or whether it instead sets out "various factual means of committing a single offense," *Miller*, 157 F.4th at 1370.

"A statute is divisible when the alternatives it lists are elements as opposed to means." *United States v. Harrison*, 56 F.4th 1325, 1332 (11th Cir. 2023). A divisible statute "lists multiple, alternative elements, and so effectively creates several different crimes." *Descamps*, 570 U.S. at 264 (quotation marks and alteration omitted). By contrast, an indivisible statute is "one that enumerates various factual means of committing a single element." *Mathis v. United States*, 579 U.S. 500, 506 (2016). In other words, with an indivisible statute, "[a] jury could convict even if some jurors concluded that the defendant used [one method to commit the crime] while others concluded that he used a [different method]." *Id*. (cleaned up). To determine "whether an alternatively phrased statute sets forth elements or means," the court must "consult authoritative sources of state law, including the language of the statute itself, pertinent state court decisions, and—if state law fails to provide clear answers—record documents from the defendant's own prior conviction." *Oliver*, 962 F.3d at 1317 (quotation marks omitted).

Because the parties did not address divisibility in their initial briefing, the court ordered them to file supplemental briefs about the divisibility of § 13A-12-217. (Doc. 30). Mr. Kailing contends that § 13A-12-217 is indivisible because the statute sets out two alternative means of committing the crime of manufacture of a

16

controlled substance and Alabama courts do not require the prosecutor to specify the subsection the defendant is charged with violating. (Doc. 38 at 5–6). The government argues that § 13A-12-217 is divisible because the Alabama Court of Criminal Appeals has affirmed the validity of an indictment that charged a defendant only with possession of a precursor substance with the intent to manufacture. (Doc. 36 at 4–5).

> The court begins with the statute's language:

> A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following:
>
> > (1) Manufactures a controlled substance enumerated in Schedules I to V, inclusive.
> >
> > (2) Possesses precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.

Ala. Code § 13A-12-217(a).

The Supreme Court in *Mathis* explained that a "statute on its face may resolve the issue" of divisibility. 579 U.S. at 518. For example, if a statute sets out alternatives that carry different punishments, each alternative is an element. *Id.* Similarly, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* By contrast, a statute that lists "illustrative examples" sets out only different means of committing the crime. *Id.*

Section 13A-12-217(a) does not fall into any of the categories set out in *Mathis*, but its plain language suggests that it might be divisible. For one thing, it is structured similarly to Alabama Code § 13A-6-66(a), which criminalized either (1) subjecting a "person to sexual contact by forcible compulsion[ ] or" (2) subjecting a "person to sexual contact who is incapable of consent by reason of being physically helpless or mentally incapacitated." In *United States v. Davis*, 875 F.3d 592, 598 (11th Cir. 2017), the Eleventh Circuit held without further discussion that "[o]n its face § 13A-6-66(a) lists two separate crimes." *See also United States v. Ferguson*, 100 F.4th 1301, 1309 (11th Cir. 2024) (describing *Davis* as holding "that a statute criminalizing sexual abuse was divisible because it consisted of two clauses set off by numbers"). In addition, § 13A-12-217(a) clearly sets out two exhaustive alternatives, not illustrative examples. The Eleventh Circuit has explained that "[i]f a statutory list is drafted to only offer 'illustrative examples,' then it is not setting forth a series of elements, but rather a variety of possible means. . . . By comparison, statutes setting forth exhaustive lists are more likely to be listing elements than means." *Ferguson*, 100 F.4th at 1309; *see also Oliver*, 962 F.3d at 1319 (finding that a statute "contain[ed] divisible threat elements" because the statute lacked "illustrative examples" and "set[ ] forth an exhaustive list of threats that qualify under the statute").

18

But neither *Davis* nor the listing of exhaustive alternatives definitively answers the divisibility question. For one thing, *Davis* was about a different statute. For another, the Alabama Court of Criminal Appeals has held that the statute at issue in *Davis* is not divisible. *See Johnson v. State*, 950 So. 2d 371, 377 (Ala. Crim. App. 2006) (holding that an earlier version of § 13A-6-66, which varied from the version at issue in *Davis* only in that it included a third way to violate the statute, set out "alternative means of committing [the] offense," such that convicting a defendant of violating two subsections was a double jeopardy violation); *cf. Simpson v. U.S. Att'y Gen.*, 7 F.4th 1046, 1055–56 (11th Cir. 2021) (relying on Florida courts' double jeopardy holdings to determine that a Florida statute was indivisible). If this case involved § 13A-6-66, *Davis* would bind on this court, even if it was wrongly decided. *Cf. United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (explaining that the prior precedent rule binds courts "even though convinced [the prior decision] is wrong"). Because this case does not involve § 13A-6-66, this court must instead look to state law to determine the divisibility of the statute at issue.

With respect to the listing of exhaustive alternatives, neither the Supreme Court nor the Eleventh Circuit have held that listing exhaustive alternatives necessarily means the statute is divisible. In *Mathis*, the Supreme Court explained that providing illustrative examples means that the statute is setting out means, not elements. 579 U.S. at 518. In *Ferguson*, the Eleventh Circuit reasoned that,

19

conversely, listing exhaustive alternatives made it "more likely" that the statute set out "elements than means." 100 F.4th at 1310. Likewise, in *Oliver*, the Eleventh Circuit found the listing of exhaustive elements merely an "indicat[ion]" that the state statute was divisible, and turned to state case law to resolve the question. 962 F.3d at 1319–20. As a result, *Davis* and the listing of exhaustive elements merely suggest indivisibility, without definitively answering the question.

The court must therefore look to Alabama caselaw. *See, e.g.*, *Ferguson*, 100 F.4th at 1311 (finding that the face of the statute indicates indivisibility and therefore proceeding to evaluate whether caselaw from state courts answered the question). Alabama law about § 13A-12-217 is sparse. The parties do not cite, and this court has not located, any Alabama Supreme Court decision addressing the divisibility of § 13A-12-217. So the court turns to decisions from the Alabama Court of Criminal Appeals. *See Cole*, 712 F.3d at 527.

The parties primarily focus on a state court decision that addresses whether § 13A-12-217 requires possession of multiple precursors. (*See* doc. 36 at 5; doc. 38 at 3, 7); *see State v. Woodall*, 988 So. 2d 1065, 1066 (Ala. Crim. App. 2007) (holding that an indictment is valid where it alleges that a defendant violated § 13A-12-217 by possession of a single precursor chemical with the intent to manufacture a controlled substance because "§ 13A-12-217 does not require evidence of plural precursor substances"). But *Woodall* does not address whether the statute sets out

20

alternative elements or alternative means. *See Woodall*, 988 So. 2d at 1066. Under Alabama law, when a statute sets out alternative means of committing an offense, the indictment suffices as long as it sets out one means. *See, e.g.*, *Hammock v. State*, __ So. 3d __, 2024 WL 4715330, at *2 (Ala. Crim. App. Nov. 8, 2024) ("[R]emoving one manner of committing the offense [from the indictment] . . . did not change the offense or charge a different offense. Further, the State is not required to prove all theories alleged in the indictment, and proof of any one theory of the offense will support a guilty verdict. Although the indictment charged the manner and means of committing the offense in the conjunctive, the circuit court did not err when it removed one manner of committing the offense."). So the *Woodall* Court's affirmation of an indictment that charged only violation of § 13A-12-217(a)(2) does not mean that § 13A-12-217(a) sets out alternative elements.

Mr. Kailing also cites *Adams v. State*, 124 So. 3d 750 (Ala. Crim. App. 2013). (Doc. 38 at 6). That decision, too, is inapposite. In *Adams*, the Alabama Court of Criminal Appeals found that an indictment failed to charge first degree manufacturing, in violation of § 13A-12-218, because it charged only second degree manufacturing plus one of the two aggravating conditions necessary to elevate the charge to a first degree offense. 124 So. 3d at 755. The *Adams* decision does not address the divisibility of § 13A-12-217(a).

However, another Alabama Court of Criminal Appeals decision does address the divisibility of the statute. In *Wallace v. State*, 130 So. 3d 212, 215 (Ala. Crim. App. 2013), the State indicted the defendant on first degree unlawful manufacturing of a controlled substance, in violation of § 13A-12-218. The indictment charged that the defendant "knowingly manufactur[ed] a controlled substance in Schedules I to V, to-wit: METHAMPHETAMINE, and/or possess[ed] precursor substances, in any amount, with the intent to unlawfully manufacture a controlled substance." *Id.* The trial court refused the defendant's request to read a jury charge giving the statutory definition of precursor substances. *Id.* at 221. The Court of Criminal Appeals concluded that the trial court's refusal to read that jury charge was harmless error because "the indictment charged *alternative means* of committing the offense of the unlawful manufacture of a controlled substance in the second degree" and the jury had found the defendant guilty of the alternative method of knowingly manufacturing methamphetamine. *Id.* at 222 (emphasis added). In other words, the indictment charging a violation of § 13A-12-217(a)(1) and (a)(2) meant that the indictment set out two alternative means of committing the offense of second degree manufacture of a controlled substance.

This court is bound by the Alabama Court of Criminal Appeals' decision because there is no "persuasive evidence that the highest state court would rule otherwise." *See Cole*, 712 F.3d at 527 (quotation marks omitted). Section 13A-12-

22

217(a) is broader than the federal definition of a "serious drug offense," and under *Wallace*, it is indivisible. Accordingly, the court may not consider the documents the government has submitted to prove which offense Mr. Kailing actually committed. *See Oliver*, 962 F.3d at 1316. His convictions under those statutes do not qualify as predicate offenses for purposes of the ACCA enhancement and he received a sentence above the statutory maximum. *Compare* 18 U.S.C. § 924(a)(2) (2018), *with id.* § 924(e)(1) (2018).

"If the court finds that . . . the sentence imposed was not authorized by law . . . , the court shall vacate and set the judgment aside and shall . . . resentence him . . . ." 28 U.S.C. § 2255(b). The court therefore **WILL GRANT** Mr. Kailing's § 2255 motion with respect to his claim that he was sentenced above the statutory maximum, **WILL VACATE** the judgment, and **WILL RESENTENCE** him.

### 2. Ineffective Assistance

Mr. Kailing also asserts that trial counsel was ineffective for failing to adequately research, investigate, advise Mr. Kailing about, and object to the ACCA enhancement. (Doc. 11 at 4; doc. 15 at 4). Although the court has already determined that it must grant him the relief requested, the court must still address this claim. *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc) (instructing "the district courts to resolve all claims for relief raised in a petition for writ of habeas corpus . . . regardless whether habeas relief is granted or denied"); *Rhode v. United*

23

*States*, 583 F.3d 1289, 1291 (11th Cir. 2009) ("[T]he district court was required to comply with *Clisby* and resolve all claims for relief raised in [the movant]'s § 2255 motion.").

To prevail on a claim of ineffective assistance of counsel, Mr. Kailing must demonstrate both that (1) his counsel's performance fell below an objective standard of reasonableness and (2) he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984). To show deficient performance, the movant "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotation marks omitted). To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The court's ruling about the merit of Mr. Kailing's underlying claim establishes that, to the extent counsel performed deficiently, that deficiency prejudiced Mr. Kailing. *See supra* at 12–23. So the court focuses on whether counsel performed deficiently. The court concludes that they[6] did not.

---

[6] Mr. Kailing had one attorney during plea negotiations and his change of plea hearing. (*See Kailing* doc. 5). After the change of plea hearing, a new attorney appeared and the original attorney withdrew. (*See Kailing* doc. 23). Several weeks later, the second attorney withdrew due to a conflict of interest and a third attorney was appointed. (*See Kailing* docs. 24, 26).

24

To show deficient performance, the movant "must show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential" and the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. The "court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time." *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc).

Mr. Kailing was sentenced in September 2021. By that time, the analytical framework for determining whether an offense counts as a predicate for ACCA purposes was well settled. *See United States v. Stancil*, 4 F.4th 1193, 1197 (11th Cir. 2021) (describing the use of the categorical approach in evaluating whether a state crime is a serious drug offense). And by that time, an Alabama court had held that an indictment charging violation of both § 13A-12-217(a)(1) and (a)(2) set out "*alternative means* of committing the offense of the unlawful manufacture of a controlled substance in the second degree," such that §§ 13A-12-217(a) and 13A-

25

12-218 are not divisible. *Wallace*, 130 So. 3d at 222 (emphasis added). However, it would be another two years before the Eleventh Circuit decided *Miles*, which clarified how to interpret "possessing with intent to manufacture or distribute," 75 F.4th at 1221, and is central to this court's decision, *see supra* at 14–15. The Eleventh Circuit has "held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1334 (11th Cir. 2016) (alteration accepted; quotation marks omitted). The court cannot find that "no competent counsel would have taken the action that [Mr. Kailing's] counsel did take." *Chandler*, 218 F.3d at 1315. Accordingly, the court **DENIES** the § 2255 motion to the extent it rests on a claim of ineffective assistance of counsel.

### 3. Certificate of Appealability

When the court enters a final order adverse to the movant, the court must also either grant or deny a certificate of appealability. Rules Governing Section 2255 Cases, R. 11(a). This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that

26

"the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 336 (quotation marks omitted).

The court will grant relief on Claim One, and so a certificate of appealability is unnecessary as to that claim. However, because the court is denying relief on Claim Two, the court must decide whether a certificate of appealability is appropriate with respect to that claim. The court concludes that it is. The court therefore **WILL GRANT** a certificate of appealability on the following question: Whether trial counsel provided ineffective assistance by failing to adequately research, advise Mr. Kailing about, and object to the sentencing enhancement under the Armed Career Criminal Act.

## III.   CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** Mr. Kailing's § 2255 motion.

The court **WILL GRANT** the motion with respect to the claim that Mr. Kailing was sentenced above the statutory maximum and therefore **WILL VACATE** the judgment and **WILL RESENTENCE** him.

The court **WILL DENY** the motion with respect to the claim of ineffective assistance but **WILL GRANT** a certificate of appealability on the following question: Whether trial counsel provided ineffective assistance by failing to

adequately research, advise Mr. Kailing about, and object to the sentencing enhancement under the Armed Career Criminal Act.

**DONE** and **ORDERED** this March 31, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

28